**UNITED STATES v. STEFANOWICZ.**

No. 14665.

United States District Court
E. D. Pennsylvania.

Feb. 1, 1949.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., for plaintiff.

Samuel Rose, of Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

Defendant was charged in eleven counts with passing counterfeit ration currency, with passing ration currency in an unauthorized manner, and with selling sugar at over the ceiling price. The jury returned a verdict of guilty on the five counts charging the first offense, and innocent on the other six, dealing with the other two offenses. Defendant has moved for a judgment of acquittal or for a new trial.

Defendant's contention in support of his first motion is apparently twofold: the government failed to prove that any counterfeit stamps were passed at all at the times alleged in the indictment, and, in any event, failed to prove defendant's connection with the crime. He has couched both objections in terms of a corpus delicti argument, but it seems settled that only the former is a corpus delicti problem. See United States v. Di Orio, 3 Cir., 150 F.2d 938, 939; cf. 7 Wigmore, On Evidence, Sec. 2072. The evidence in the case included the following: testimony from a key government witness, O'Neill, that he had purchased sugar stamps from defendant at certain times in November and December, 1945, which he then returned to defendant's company in the usual manner to obtain sugar; checks signed by O'Neill, and made payable to defendant or cash, bearing an endorsement in defendant's name, for the amounts O'Neill said he paid defendant for the stamps, and dated at the approximate times alleged in the information; testimony from two former OPA employees that quantities of counterfeit stamps were turned in by this company to the sugar ration bank (one agent said "close to a quarter million counterfeit stamps"), and that these counterfeit stamps had been given to the company by O'Neill; counterfeit stamps, with O'Neill's name written on the back, which had been turned into the ration bank by defendant's company. If the jury believed O'Neill's testimony and his version of the checks, which they obviously did, the real issue was whether counterfeit stamps were passed to O'Neill, or whether legal stamps were passed in an unauthorized manner, as the two offenses were mutually exclusive. Although it is true that O'Neill did not state that the stamps he bought from defendant in November and December, 1945, were counterfeit, I feel that this was a permissible inference for the jury to make, from his testimony and that of the government agents. In any event, I feel that there was sufficient evidence in the case to establish both the corpus delicti and defendant's connection with the crime. Cf. Petrilli v. United States, 8 Cir., 129 F.2d 101; United States v. Adelman, 2 Cir., 107 F.2d 497.

In support of his motion for a new trial, defendant is apparently also pressing two arguments: there was error in not excluding certain testimony from a government agent, Swartley, and in failing to have introduced into evidence the ration order allegedly violated. Defendant's brief makes clear that the contention as to Swartley is that he was unqualified to testify to the approximate time within which the ration stamps offered into evidence were valid. The witness testified that he worked for the OPA for over four years, was head of the Counterfeit Division of the sugar stamps, took a course in the study of stamps, and was familiar with the various orders that were issued by the Administrator, particularly those relating to the transfer of ration currency. It may be, as defendant contends, that Swartley's testimony was incorrect; if so, defendant could have introduced evidence to contradict it. But whether Swartley was right or not is irrelevant to the issue of the admissibility of his testimony. The test is not the accuracy of what he said, but the likelihood that what he might say would be helpful; i. e., that he had " * * * the requisite special knowledge, skill, experience, or training." See Restatement, Model Code of Evidence, Sec. 402; United States v. Certain Parcels of Land in City of Philadelphia, Pa., 3 Cir., 145 F.2d 374, 375, 159 A.L.R. 1. Judged by this standard, I feel that Swartley was competent to testify to the period of time during which the stamps were valid. Defendant's second argument is that the government should have introduced into evidence the ration orders allegedly violated, since otherwise the jury had no means of knowing what these orders called for. Defendant is correct, of course, in maintaining that the jury had to know the contents of an order to convict him for violating it, but I cannot agree that the only, or even the proper, way of giving them this information was to introduce the order into evidence. Nor does Corson v. United States, 9 Cir., 147 F.2d 437, upon which defendant relies, lead me to a different conclusion. In that case, a conviction for unlawful transfer of ration currency was reversed because the jury was not sufficiently instructed by the trial judge as to the contents of the relevant ration order. But such is not the case here. As to the counts upon which the jury found defendant guilty, the Court read a sample count from the information and portions of the Second War Powers Act, 50 U.S. C.A.Appendix, § 633(2) (a), summarized the applicable parts of Ration Order No. 8, 8 F.R. 3783; 9 F.R. 1325; 9 F.R. 3746, and defined the elements of the crime. In addition, the jury took the eleven-count information with them to the jury room. I feel that this was the "sufficient legal guidance" called for by the line of cases dealing with this problem in this Circuit, none of which were called to the Court's attention by either counsel. Cf. United States v. Pincourt, 3 Cir., 159 F.2d 917; United States v. Max, 3 Cir., 156 F.2d 13; United States v. Noble, 3 Cir., 155 F.2d 315; United ed States v. Levy, 3 Cir., 153 F.2d 995. Therefore, I shall deny defendant's motions for judgment of acquittal or a new trial, and an order will be entered in accordance with this opinion.