SOUTHERN NATURAL GAS COMPANY, Plaintiff-Appellee,

v.

LAND, CULLMAN COUNTY, 2.0 acres of land located in Cullman County, Alabama;  Mack Rice, et al., Defendants-Appellants.

No. 99-6008.

United States Court of Appeals,

Eleventh Circuit.

Dec. 16, 1999.

Appeal from the United States District Court for the Northern District of Alabama. (No. 97-01728-CV-L-S), Seybourn H. Lynne, Judge.

Before DUBINA, Circuit Judge, KRAVITCH, Senior Circuit Judge, and NESBITT[*], Senior District Judge.

DUBINA, Circuit Judge:

This case involves an appeal from a judgment entered in favor of the appellee in a pipeline condemnation action filed pursuant to the Natural Gas Act, 15 U.S.C. § 717, *et seq.*[1]  The landowners, among other things, challenge the use of a federal land commission, pursuant to Federal Rule of Civil Procedure 71A, to determine the appropriate compensation for a federally authorized taking of private land.  We affirm in part, and vacate in part.

## I. *BACKGROUND*

Appellee, Southern Natural Gas Company ("Southern"), is an interstate natural gas pipeline company serving the southeastern United States.  Southern entered into long term service contracts with the cities of Huntsville and Decatur, Alabama, to provide natural gas transportation services to those north Alabama cities.  In order to provide such services, Southern must construct a 122-mile extension of its pipeline, extending it from Tuscaloosa to Huntsville.  Southern obtained a Certificate of Public Convenience and Necessity from

---

[*]Honorable Lenore C. Nesbitt, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

[1]In addition to the present case, there are approximately 20 additional appeals pending involving the same issue presented here which have been stayed by order of this court.

the Federal Energy Regulatory Commission ("FERC") for the purpose of constructing the pipeline. Extension of the pipeline requires the use of a series of 50-foot-wide permanent easements that will cross some 500 tracts of land in seven Alabama counties. Although a majority of the landowners signed right-of-way agreements with Southern, it became necessary to condemn nearly 200 tracts of land. This appeal involves the process by which "just compensation" for the taking of these 50-foot easements will be determined.

Pursuant to the Natural Gas Act, 15 U.S.C. § 717, *et seq.,* which governs the activities of interstate pipelines like Southern's, Southern filed condemnation actions in the United States District Court for the Northern District of Alabama. For judicial efficiency, all of these cases were assigned to Judge Seybourn H. Lynne, who, exercising the discretion granted him under Rule 71A of the Federal Rules of Civil Procedure ("Rule 71A"), appointed a federal land commission ("the commission") to hear the just compensation cases. In deciding to use a commission rather than conduct individual jury trials, Judge Lynne stated his concern that "[i]t would take years and years in jury trials" to determine the amount of just compensation due to the landowners in these cases.

Throughout the condemnation process, the district court provided guidance to the commission in terms of procedure, just compensation principles, and applicable standards. In accordance with the district court's instructions, the commissioners viewed the properties and conducted evidentiary hearings. After each evidentiary hearing, the commission reported its determination of the amount of just compensation due to the owner of each tract. If either party objected to the commission's report, Judge Lynne heard those objections and permitted testimony, as well as the presentation of other evidence, before adopting, modifying, or rejecting the report as provided in Federal Rule of Civil Procedure 53(e)(2).

The route of Southern's natural gas pipeline crosses a 100 acre cattle pasture owned by Mack and Callie Mae Rice ("the Rices") in Cullman County, Alabama. Southern filed a condemnation complaint in the Northern District of Alabama against this property. The complaint included a legal description and a plat map depicting the easements needed across the Rices' land.

Subsequently, the commissioners, parties, and lawyers viewed this tract, and the commissioners conducted an evidentiary hearing to determine the appropriate award of just compensation for the taking of the pipeline easement. The commissioners had no problem identifying and walking the easement. Witnesses for both sides testified before the commission, offering opinions as to the value of the permanent and temporary takings.

After the commission issued its report to the district court regarding the Rices' land, the district court conducted a hearing on the parties' specific objections to the report. The court then entered a judgment and memorandum opinion modifying the commission's findings with respect to amounts awarded for (1) a "limiting effect" on "future improvements," and (2) dislocation to the Rices' cattle operation. The Rices appeal the district court's modification of the commission's determination on these two issues and challenge the court's discretion to appoint a commission, as well as the court's finding that the complaint for condemnation contained an adequate land description.

## II. *STANDARDS OF REVIEW*

We review the district court's decision to deny a jury demand and appoint a Rule 71A commission to determine just compensation in eminent domain cases for abuse of discretion. *See United States v. 2,477.79 Acres,* 259 F.2d 23, 27 (5th Cir.1958).[2] The extent to which Rule 71A supersedes the practice and procedure language of 15 U.S.C. § 717f(h) is a question of law. This court subjects questions of law to *de novo* review. *See Blackfeet Nat'l Bank v. Nelson,* 171 F.3d 1237, 1240 (11th Cir.), *cert. denied,* --- U.S. ----, 120 S.Ct. 497, --- L.Ed.2d ---- (1999).

The district court's decision that Southern's legal description was adequate is a finding of fact that must stand unless clearly erroneous. *See Onishea v. Hopper,* 171 F.3d 1289, 1296 (11th Cir.1999)(*en banc*)(petition for certiorari filed May 20, 1999). Whether the legal description must conform to the standards of

---

[2]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981)(en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

Rule 71A or to the standards of state law is a question of law to be reviewed *de novo. See Blackfeet Nat'l Bank,* 171 F.3d at 1240.

This court reviews the district court's determination of just compensation for clear error. *See O'Brien v. United States,* 392 F.2d 949, 952 (5th Cir.1968).

### III. *ANALYSIS*

The Takings Clause in the Fifth Amendment to the United States Constitution prohibits the government, or its agents, from taking private property for "public use" without "just compensation." U.S. Const. Amend. V. Passed in 1938, the Natural Gas Act, 15 U.S.C. § 717f(h), gives private gas companies the federal power of eminent domain to acquire the necessary right of way to construct, operate, and maintain a pipe line for the transportation of natural gas. The statute grants jurisdiction to the U.S. district courts when the amount claimed by the owner of the property to be condemned exceeds $3,000. 15 U.S.C. § 717f(h).

A.       *Jury Trial or Commission*

This appeal raises the issue of whether Rule 71A of the Federal Rules of Civil Procedure supersedes the Natural Gas Act's practice and procedure clause for the condemnation of property.[3] The Rices argue that they are entitled to a jury trial under the Natural Gas Act, 15 U.S.C. § 717, *et seq.* The Natural Gas Act provides that the practice and procedure in a condemnation action "shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." 15 U.S.C. § 717f(h). Southern, however, contends that the Rices are not entitled to a jury trial because Rule 71A grants the district court, in any action which "involves the exercise of the power of eminent domain under the law of the United States," the discretion to determine whether the issue of just compensation will be heard by a jury or a court-appointed commission.[4] Fed.R.Civ.P. 71A(h). In our view,

---

[3]As a threshold matter, *Georgia Power Co. v. 138.30 Acres of Land,* 596 F.2d 644 (5th Cir.1979), confirms that: (1) landowners have no constitutional right to a jury trial, and (2) the district court has the discretion, under Rule 71A, to appoint a commission to determine just compensation. *See id.* at 647-48; *see also Alabama Power Co. v. 1354.02 Acres of Land,* 709 F.2d 666, 667-68 (11th Cir.1983).

[4]Federal Rules of Civil Procedure 71A specifically excludes from this provision, "any tribunal specially constituted by an Act of Congress." This exception is not applicable to the present case.

Southern is correct because Rule 71A authorizes the district court judge to use a commission in this case and the Rule supersedes the Natural Gas Act's practice and procedure clause.

Rule 71A(h) expressly provides, in pertinent part, that

> any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, *unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it.*

Fed.R.Civ.P. 71A(h) (emphasis added). The plain language of Rule 71A grants the district court broad discretion. The district court may, in its discretion, order a hearing by a commission for any number of reasons: the character of the property, or the location of the property, or the quantity of the property, or "other reasons in the interest of justice." We believe that Southern's pipeline project, with over 500 tracts of property spread over seven counties and 122 miles, is precisely what the drafters of Rule 71A had in mind in listing exemplary reasons for denying jury trials (character, location, and quantity). Thus, the district court correctly exercised its discretion in appointing a commission to determine the issue of just compensation.

To apply Rule 71A in the case before us, the court must determine that Rule 71A supersedes the Natural Gas Act's practice and procedure clause. "Courts generally adhere to the principle that statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones." *United States v. Lara,* 181 F.3d 183, 198 (1st Cir.1999) (citing *HCSC-Laundry v. United States,* 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981) and *Morton v. Mancari,* 417 U.S. 535, 550-51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)), *cert. denied,* --- U.S. ----, 120 S.Ct. 432, --- L.Ed.2d ---- (1999). The Supreme Court has already determined, in cases dealing with statutes other than the Natural Gas Act, that Rule 71A supersedes the practice and procedure language of the prior statute. In *United States v. 93.970 Acres of Land,* 360 U.S. 328, 79 S.Ct. 1193, 3 L.Ed.2d 1275 (1959), the Court rejected the assertion that the practice and procedure language in 50 U.S.C. § 171[5] controlled over

---

[5]Title 50 U.S.C. § 171 (1918) (repealed 1956) provided that condemnation proceedings were "to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted." 50 U.S.C. § 171.

the more recent procedural directives set forth in Rule 71A. *See* 360 U.S. at 333 n. 7, 79 S.Ct. 1193. The

Court stated, "it is settled that this [practice and procedure] language required conformity in procedural

matters only. And insofar as it required such procedural conformity it was clearly repealed by Rule 71A,

Federal Rules of Civil Procedure." *Id.* (internal citations omitted). Later, in *Kirby Forest Industries, Inc. v.*

*United States,* 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984), the Court again noted that the practice and

procedure language of a prior statute[6] had been superseded by the passage of Rule 71A. *See* 467 U.S. at 4 n.

2, 104 S.Ct. 2187.

In accordance with the principle that a more recent statute prevails over an older conflicting statute,

we can find only one case that directly analyzes the relationship between Rule 71A and § 717f(h). In *USG*

*Pipeline Co. v. 1.74 Acres in Marion County, Tennessee,* 1 F.Supp.2d 816 (E.D.Tenn.1998), the district court

held that Rule 71A superseded the practice and procedure language of § 717f(h). Specifically, the court

stated:

> The Natural Gas Act was enacted in 1938, and Rule 71A was enacted in 1951. Rule 71A(a)
> provides: "The Rules of Civil Procedure for the United States District Courts govern the procedure
> for the condemnation of real and personal property under the power of eminent domain, except as
> otherwise provided in this rule." The Advisory Committee Notes to Rule 71A state: "Rule 71A
> affords a uniform procedure for all cases of condemnation invoking the national power of eminent
> domain, and ... supplants all statutes prescribing a different procedure." *See Kirby Forest Indus. v.*
> *United States,* 467 U.S. 1, 104 S.Ct. 2187, 2191 n. 2, 81 L.Ed.2d 1 (1984) ("The adoption in 1951
> of Rule 71A capped an effort to establish a uniform set of procedures governing all federal
> condemnation actions.") Interpreting a statute with similar language requiring conformity with state
> practice and procedure, the United States Supreme Court found the statute's procedural conformity
> provision was "clearly repealed" by Rule 71A. *United States v. 93.970 Acres Land,* 360 U.S. 328,
> 79 S.Ct. 1193, 1196 n. 7, 3 L.Ed.2d 1275 (1959); see also *Kirby Forest,* 104 S.Ct. at 2191 & n. 2
> (determining Rule 71A supersedes requirement of conformity with state practice and procedure
> contained in 40 U.S.C. § 257).

*USG Pipeline Co.,* 1 F.Supp.2d at 827. We agree with the Tennessee district court that Rule 71A, not the

practice and procedure language of § 717f(h) and not state law, governs the proceedings in the instant case.

---

[6]The *Kirby Forest* Court noted that "[s]uits under [40 U.S.C.] § 257 originally were required to 'conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State' in which the suits were instituted," but that the subsequent passage of Rule 71A rendered that portion of the statute inapplicable. *Kirby Forest,* 467 U.S. at 4 n. 2, 104 S.Ct. 2187 (quoting Act of Aug. 1, 1888, ch. 728, § 2, 25 Stat. 357).

*See id.; see also Kirby Forest,* 467 U.S. at 4 n. 2, 104 S.Ct. 2187; *93.970 Acres,* 360 U.S. at 333 n. 7, 79 S.Ct. 1193; *Alabama Power Co.,* 709 F.2d at 668.

In addition to *USG Pipeline, Kirby Forest,* and *93.970 Acres of Land,* this circuit's holding in *Alabama Power Co. v. 1354.02 Acres of Land* is particularly instructive in the case before us because the Federal Power Act, which was at issue in *Alabama Power,* contains practice and procedure language that is virtually identical to the language in the Natural Gas Act's practice and procedure clause. *Compare* 16 U.S.C. § 814, *with* 15 U.S.C. § 717f(h). The *Alabama Power* court affirmed the district court's appointment of a commission pursuant to Rule 71A and thus, implicitly recognized that Rule 71A supersedes practice and procedure language in prior conflicting statutes. *See* 709 F.2d at 667-68. The Rices attempt to distinguish *Alabama Power* by the single fact that *Alabama Power* concerned the Federal Power Act, 16 U.S.C. § 814, and not the Natural Gas Act. While this distinction may prevent *Alabama Power* from providing binding precedent in this case, *Alabama Power* is nonetheless persuasive because of the similarity in the practice and procedure language of the two statutes. We can conceive of no logical reason for the practice and procedure language of these two statutes to be given different meanings.

In conclusion, we hold that the practices and procedures of federal eminent domain actions, including those filed pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h), are governed by Rule 71A and not by state law. Moreover, we hold that Rule 71A supersedes § 717f(h). It is clear to us that Rule 71A was promulgated to override a number of confusing federal eminent domain practice and procedure provisions, such as that of 15 U.S.C. § 717f(h), and to provide a unified and coherent set of rules and procedures to be used in deciding federal eminent domain actions. Accordingly, we conclude that the district court acted within its discretion in denying the Rices' jury demand and in appointing a commission to determine just compensation.

B.      *Adequacy of Legal Description*

Concordant with their assertion that the Natural Gas Act's practice and procedure language applies to this case, rather than Rule 71A, the Rices argue that Alabama state law and procedure govern the legal

description requirements. Because we have already determined that Rule 71A supersedes the practice and procedure language in the Natural Gas Act, 15 U.S.C § 717f(h), their argument on this point must fail as well.

Rule 71A(c)(2) requires that a condemnation complaint include a description of the property sufficient for its identification. Southern's complaint for condemnation easily satisfied this requirement by incorporating both a legal description and a plat map showing the placement of the pipeline and relevant easements. Moreover, as a practical matter, the commissioners, the parties, and the lawyers have walked the centerline of the easement from one end of the Rices' property to the other, and no one had any problem locating the easement. Thus, we see no merit to the Rices' assertion that the property description was inadequate.

C. *Just Compensation*

A district court's review of a commission's report under Rule 71A(h) is the same as its power over the findings of fact by a master under Rule 53(e)(2) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 71A(h); *see also United States v. Merz,* 376 U.S. 192, 198-200, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964) (discussing Rule 71A(h)). Where a district court determines that a commission's findings are inadequate or clearly erroneous, the court, in accordance with Rule 53(e)(2), may use its informed discretion to " 'modify' the report on the basis of the record made before the commissioners, or it 'may reject it in whole or in part or may receive further evidence or may recommit it with instructions.' " *Merz,* 376 U.S. at 199-200, 84 S.Ct. 639 (quoting Fed.R.Civ.P. 53(e)(2)).

In reviewing the district court's determination of just compensation, this court determines: (1) whether the district court applied the proper standard in considering the findings; (2) whether it erred in rejecting the findings of the commission as clearly erroneous; and (3) whether, in turn, the findings made by the district court are clearly erroneous. *See United States v. Twin City Power Co. of Georgia,* 253 F.2d 197, 203 (5th Cir.1958). This court reviews not the award of the commission, but the judgment of the district court. *See Parks v. United States,* 293 F.2d 482, 485 (5th Cir.1961).

In the Rices' just compensation case, the commission awarded $3,980 in compensation for the permanent easement over 1.99 acres of the Rices' land, $14,000 for the decreased property value of the Rices' remaining land, and $2,000 for the temporary easement over additional land and the temporary dislocation of the Rices' cattle. Neither party disputed the award of $3,980 for the permanent taking. Southern contested the remaining awards. After reviewing the commission's findings on the Rices' claim, the district court found that the commission violated its instructions and erroneously recommended damages unsupported by the evidence. In particular, the district court modified two elements of the commission's report that were not supported by substantial evidence: (1) damages for a "limiting effect" on "future improvements," and (2) amounts awarded for dislocation of cattle operations.

The commission awarded $14,000 to the Rices as compensation for the decrease in property value due to the "limiting effect" of the pipeline on the Rices' ability to make future improvements to the remainder of their land. Southern objected that this award was improper in light of the commission's instructions. In its instructions to the commission, the district court explained that future uses of the property may be considered in determining just compensation only when the evidence shows such use to have been, but for the taking, a probable use in the reasonably near future.

Southern argues that the evidence on future use presented to the commission did not show a probable use in the reasonably near future. The commission heard the testimony of three expert witnesses regarding the value of the Rices' land[7], as well as the testimony of Max Rice himself. The only future improvement Mr. Rice suggested to the commission was that he or his grandson "might build" some additional chicken houses. Neither through this testimony, nor elsewhere, did the Rices provide evidence of actually making a decision to build, provide evidence of steps taken toward construction, or even describe the location of any future improvements within the two acre pipeline easement. Moreover, the Rices never established that any suggested improvement could not be built on the almost 100 acres they own outside of the pipeline easement.

_____

[7]One appraiser testified that there would be no damage to the remainder of the property due to the existence of the pipeline. Two other appraisers estimated that the total value of the Rices' land would be reduced by approximately $30,000 to $50,000.

Upon review of the evidence, the district court concluded that there was insufficient evidence that future improvements were planned for the condemned property. The district court therefore refused to extend an award unsupported by the evidence. We agree with the district court that the record evidence of plans for any future improvements to the property was speculative at best and insufficient to merit an award for future damage. Accordingly, we affirm that aspect of the district court's judgment.

The commission also determined that the Rices were entitled to an additional $2,000 to compensate for a 20-foot wide temporary construction easement and to cover the cost of relocating the Rices' cattle while Southern installed the gas line. The commission expressly adopted the valuation offered by one expert that the rental value of the temporary construction easement was $388. Neither party disputes this rental value amount. The remaining $1,612 awarded by the commission represents unspecified damages arising out of the need to move the cattle during the installation of the gas line. Southern objected to the commission's award of $1,612.

Upon reviewing the evidence presented to the commission, the district court determined that the $388 figure was acceptable, but that the additional $1,612 "dislocation" award was clearly erroneous due to a lack of evidence. The commission's report is silent as to any testimony or evidence regarding the cost of cattle disruption. The Rices admit that no witness testified to any dollar value associated with disruption to the cattle operations and that the sole witness to raise the subject, Mr. Rice, uttered very little on the subject. Additionally, Southern's expert appraiser attributed no damages to cattle dislocation.

The district court determined that there was a "lack of evidence" to support the commission's $1,612 award for cattle dislocation, but concluded that there was "evidence of some 'dislocation' in cattle operations." The district court then reduced the commission's dislocation award from $1,612 to $612. We find it problematic that the district court reduced the commission's dislocation award because of insufficient evidence, but then failed to identify any specific evidence which supported its own, lower award. In doing so, we conclude the district court committed clear error. Consequently, we vacate the district court's award

of $612 in compensation for cattle dislocation and remand this case to the district court for more specific

findings as to the damage caused by the dislocation of cattle.[8]

## *IV. CONCLUSION*

For the reasons set forth in this opinion, we affirm all of the district court's judgment, with the

exception of the amount awarded for cattle dislocation.  That part of the judgment is vacated and we remand

this case to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

---

[8]Because the original basis for the commission's dislocation award is unclear, the district court may decide to remand this issue to the commission for specific findings regarding the cost of moving the Rices' cattle.  We leave that decision to the district court on remand.